# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN ODELL BOULWARE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREEN WALL GANG, et al.,<br><br>　　　　　Defendants. | CASE NO. 1:05-cv-01565-LJO-GSA (PC)<br><br>AMENDED ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND WITHIN THIRTY DAYS – ERATTA NAME OF PLAINTIFF IN ORIGINAL SCREENING ORDER<br><br>(Doc. 1) |

The Court, hereby corrects error in the original screening order inadvertently listing "Ernesto G. Lira" as plaintiff in this action. Thus, correction is made herein below to reflect Ruben Odell Boulware as plaintiff.

## I.   SCREENING ORDER

### A.   Screening Requirement

Plaintiff, Ruben Odell Boulware, ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on December 9, 2005.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**B.   Plaintiff's Claims**

The events at issue in the instant action allegedly occurred at Folsom State Prison ("FSP") in Folsom, California, where plaintiff was incarcerated during the alleged events. Plaintiff is currently incarcerated at Soledad, California. On the first page of the form complaint, plaintiff names as defendants: the "Green Wall Gang," S.S. Cox, T. Manuel, K. Haworth, S. Shambre, Armstrong, W. Dutton, R. Clayton, D. Ervin, Jr., A. McNeal, B. Jones, R. Braziel,

Trujillo, and Howell. Unfortunately, the third page of the form complaint is missing and was apparently not filed with the Court. Since page three is missing, based on what is in front of the Court, it appears that plaintiff states the surnames of prison staff, other than those listed on the complaint's first page, for context and/or as possible witnesses. However, plaintiff will have opportunity to amend his complaint and should clarify this issue for the Court if he intends to charge any defendants other than as listed on the first page of his complaint.

Plaintiff alleges five causes of action for violations of his constitutional rights: (1) procedural due process violations by Clayton relating to disciplinary hearings; (2) racially motivated equal protection violations by "the 'Green Wall Gang' and all defendants" including retaliatory rule violation reports; (3) violation of his freedom to practice his religion and the RLUIPA by Cox, Braziel, Trujillo, Howell, and the "Green Wall Gang;" (4) retaliatory violation of his right to access the courts by the "Green Wall Gang;" and (5) conspiracy to deny him his rights to access the courts, due process, and equal protection of the law by "the 'Green Wall Gang' defendants."

Plaintiff did not delineate any relief sought. This should be rectified when plaintiff files an amended complaint containing the third page.

Throughout the complaint plaintiff refers to various exhibits. However, quite correctly, no exhibits were filed with plaintiff's complaint. Plaintiff is advised that it is inappropriate to attach exhibits to a complaint. See Rule 8, Federal Rules of Civil Procedure. Further, the Court cannot serve as a repository for the parties' evidence. Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) should not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the court). At this point, the submission of evidence is premature as the plaintiff is only required to state a prima facie claim for relief. Thus, in amending his complaint, plaintiff should simply state the facts upon which he alleges a defendant has violated his constitutional rights and refrain from submitting, or referring to, exhibits.

**C.      Plaintiff's Section 1983 Claims**

It appears to the Court that plaintiff's claims are largely based on his activities as a

1  "Black" Mens Advisory Council Representative ("MAC").  Based on the allegations in plaintiff's
2  complaint, he has adequately plead a few claims for relief under section 1983.  However, a
3  number of the events complained of by plaintiff, do not yet state cognizable constitutional
4  violations.
5      The Civil Rights Act under which this action was filed provides:
6          Every person who, under color of [state law] . . . subjects, or causes
             to be subjected, any citizen of the United States . . . to the
7          deprivation of any rights, privileges, or immunities secured by the
             Constitution . . . shall be liable to the party injured in an action at
8          law, suit in equity, or other proper proceeding for redress.
9  42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between
10  the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See
11  Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
12  (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a
13  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates
14  in another's affirmative acts or omits to perform an act which he is legally required to do that
15  causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th
16  Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named
17  defendant with some affirmative act, or omission, that demonstrates a violation of plaintiff's
18  federal rights.
19      Plaintiff has named the "Green Wall Gang" without identifying for the Court the
20  surnames of its individual members.  The Court recognizes that the "Green Wall Gang" is a
21  colloquial name intended to apply to prison staff working in concert against inmates.  However,
22  the "Green Wall Gang" is not a person for purposes of § 1983.  Likewise, plaintiff should refrain
23  from using the phrase "the defendants" and instead should name individual defendant actors in
24  his factual allegations.  In order to proceed under section 1983, plaintiff must allege sufficient
25  facts to support a claim that *each* defendant named in the complaint either acted or failed to act in
26  a manner that was adverse to plaintiff.  Plaintiff is cautioned that in his amended complaint, he
27  must clearly identify what actions or omissions led to the violation of his rights and which
28  defendants were responsible for the acts or omissions.

The Court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a) and sets forth for each defendant, *as briefly as possible*, what action that defendant took or failed to take and why (e.g., to retaliate against plaintiff for litigating in court or for filing inmate grievances, etc.). In the subsections that follow, the Court will provide plaintiff with the legal standards that, based on plaintiff's allegations, appear to be applicable. Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.

**1.** *Retaliation*

Most of plaintiff's claims are based on acts performed allegedly in retaliation for filing inmate grievances.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate

5

against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff's allegations will be addressed under the applicable standards for the actions he claims were retaliatory herein below.

### 2. *Plaintiff's First and Fourth Causes of Action – Procedural Due Process*

Plaintiff's first cause of action alleges procedural due process violations by Clayton relating to disciplinary hearings. Doc. 1, pg. 12.

Plaintiff's fourth cause of action alleges that the "Green Wall Gang" retaliated against him via fabricated rules violation reports and the disciplinary hearings in retaliation for plaintiff's filing of grievances related to his MAC position. Doc. 1, pg. 14.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (9th Cir. 1974); see also Superintendent v. Hill 472 U.S. 445, 454 (1985); Neal v. Shimoda, 131 F.3d 818, 830-31 (9th Cir. 1997); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir.

1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." <u>Hill</u>, 472 U.S. at 455; <u>see also</u> <u>Touissaint v. McCarthy</u>, 926 F.2d 800, 802-03 (9th Cir. 1991); <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269-70 (9th Cir. 1989); <u>Jancsek, III v. Oregon bd. Of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987); <u>see</u> especially <u>Burnsworth v. Gunderson,</u> 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.)  However, the "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false.  <u>Hines v. Gomez</u>, 108 F.3d 265, 268 (9th Cir. 1997).

In his first cause of action, plaintiff alleges that Clayton denied his procedural due process rights at three disciplinary hearings.  Doc. 1, pg. 12.

First, plaintiff claims his procedural due process rights were violated at the March 22, 2005 hearing when Clayton used a selection of plaintiff's written questions and telephonic interviews instead of requiring personal attendance by plaintiff's requested witnesses and restricted plaintiff from cross-examining adverse witnesses.  Clayton also did not allow plaintiff to talk at the hearing.

Second, plaintiff claims his procedural due process rights were violated at a hearing in May of 2005 when Clayton used a selection of plaintiff's written questions and telephonic interviews instead of requiring personal attendance by plaintiff's requested witnesses and restricted plaintiff from cross-examining adverse witnesses.

Third, plaintiff claims his procedural due process rights were violated at a hearing in July of 2005 when Clayton used a selection of plaintiff's written questions and telephonic interviews instead of requiring personal attendance by plaintiff's requested witnesses, and restricted plaintiff altogether from calling favorable witnesses -- B.C. Adams and others.  In his cause of action plaintiff states that he *was* able to present documentary evidence.  However, the Court interprets this as a typographical error since the facts in his statement of claims indicate that he was *not* able to present documentary evidence.

1  While not stated in his causes of action, plaintiff's statement of claims includes additional
2  allegations regarding false rules violation reports and disciplinary hearings.
3  Plaintiff alleges that in January of 2005, Haworth filed a false rules violation report
4  against him, utilizing the director's disciplinary process to inflict unlawful punishment on
5  African-Americans and Hispanics.  Cox allegedly conducted a "counterfeit" investigation into
6  Haworth's false accusations.  Doc. 1, pp. 4-5.  Plaintiff further states that Shambre filed a false
7  rules violation report against him for "being out of bounds" to retaliate against plaintiff for acting
8  as a MAC, filing prisoner grievances, and out of ethnic bias.
9  Plaintiff alleges that:  Braziel falsely accused plaintiff of making threats on staff;
10 Williams restricted plaintiff to approved written questioning of Braziel during his telephonic
11 appearance at the disciplinary hearing; and thereafter Williams found plaintiff guilty of "behavior
12 which could cause violence."  Doc. 1, pp. 8 & 10.
13 Plaintiff alleges that Haworth, Shambre, Ervin, Jr., and Braziel issued their false rule
14 violation reports to stymie plaintiff's MAC activities and out of racial animus.  Doc. 1, pg. 10.
15 In all of the above allegations, plaintiff fails to state any infringement of his liberty
16 interest(s).  He also fails to establish the existence of a liberty interest for which he seeks
17 protection.  If no liberty interest is established, plaintiff has no right to procedural due process.
18 Thus, plaintiff has failed to state cognizable claims for violation of his rights to procedural due
19 process against Clayton, Haworth, Shambre, Braziel, Ervin, Jr., McNeal, Dutton, Cox, Jones,
20 Manuel, Armstrong, Howell, and Trujillo for the above actions.
21 However, plaintiff states that Manuel, Dutton, Ervin, Jr., McNeal, and Cox individually
22 and collectively issued a fabricated rule violation report and placed plaintiff in Ad Seg.  Doc. 1,
23 pg. 8.  Here, plaintiff has established a liberty interest (due to his placement in Ad Seg) and has
24 established a violation of his right to procedural due process via fabrication of rule violation
25 reports.  Thus, plaintiff has stated cognizable due process claims against Manuel, Dutton, Ervin,
26 Jr., McNeal, and Cox.
27 Additionally, plaintiff's statement of claims alleges that Ervin, Jr., McNeal, Haworth,
28 Shambre, Dutton, Cox, Jones, Manuel, Braziel, Clayton, Armstrong, Howell, and Trujillo, in

9

filing false rules violation reports and conducting the disciplinary hearings, acted in retaliation for plaintiff's activities of filing inmate grievances, and to cause plaintiff to be transferred to another facility. Doc. 1, pg. 11. While not sufficient to state a procedural due process violation, this is sufficient to state a claim for unconstitutional retaliation. Thus, plaintiff has stated cognizable retaliation claims against Ervin, Jr., McNeal, Haworth, Shambre, Dutton, Cox, Jones, Manuel, Braziel, Clayton, Armstrong, Howell, and Trujillo.

Plaintiff's claim under his fourth cause of action, for retaliation by the "Green Wall Gang," is not cognizable claim as it fails to link any retaliatory actions to identifiable defendants.

### 3. *Plaintiff's Second Cause of Action – Equal Protection*

Plaintiff's second cause of action alleges racially motivated equal protection violations by "the 'Green Wall Gang' and all defendants." Doc. 1, pg. 13.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of

Willowbrook, 528 U.S. at 564.  If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

In his second cause of action, plaintiff alleges he was the victim of racially motivated retaliatory false rules violation reports, hostility, and discrimination in hiring at FSP.  See section "2. *Plaintiff's First Cause of Action – Procedural Due Process*" for discussion of the retaliatory false rules violation reports.

Plaintiff does not specifically state that he is a member of an identifiable class.  However, the Court infers from plaintiff's allegations of being elected to be a "Black" Mens Advisory Council Representative, that plaintiff is African-American.  When filing his amended complaint, plaintiff should specifically allege his race so as to avoid subsequent dispute.  As to the racially motivated false rules violation reports and hostility, plaintiff fails to allege whether (and how) he was intentionally treated differently from others similarly situated and whether there was any rational basis for the difference in treatment.  Also, as stated previously, the nomenclature of "the Green Wall Gang" being the offending actor(s) fails to link the offending allegations to individual actors.  Finally, as to plaintiff not being hired as a clerk within the watch office, while plaintiff alleges that his position "has historically been a haven for white inmates to the exclusion of others," plaintiff then states that the reason he was not hired as a clerk within the watch office is because of the rational basis of "Racial Quotas" needed to satisfy the director of corrections' regulation – which is a rational basis for the hiring decision.  Thus, plaintiff has failed to allege a cognizable claim for violation of his right to equal protection of the law.

**4.**     ***Plaintiff's Third Cause of Action – Freedom of Religion & the RLUIPA***

Plaintiff's third cause of action alleges violation of his freedom to practice his religion and the RLUIPA by Cox, Braziel, Trujillo, Howell, and the "Green Wall Gang."  Doc. 1, pg. 13.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const., amend. I.  Prisoners "retain protections afforded by the First Amendment,"

including the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" Id. (quoting Price v. Johnson, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060 (1948)). "In order to establish a free exercise violation, [a prisoner] must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" Freeman, 125 F.3d at 737 (quoting Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir. 1987)).

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff alleges that on April 23, 2005, Braziel told Hanaford that plaintiff had threatened him so as to keep plaintiff from attending religious services and that on April 24, 2005, Cox and Trujillo instructed Howell not to allow plaintiff to attend religious services, despite plaintiff being on the list to be allowed to do so. Doc. 1, pp. 9 & 10. Plaintiff does not allege that

attending religious services was mandated by his faith, nor does he establish whether there was any justification reasonably related to legitimate penological interests for his not being allowed to attend the two religious services. Once again, the nomenclature of "the Green Wall Gang" being the offending actor(s) fails to link the offending allegations to individual actors. Thus, plaintiff fails to state cognizable claims for violation of his right to freely exercise his religion, or for violation of RLUIPA.

### 5.   *Plaintiff's Fifth Cause of Action – Conspiracy*

Plaintiff's fifth cause of action alleges a conspiracy to deny him his rights to access the courts, due process, and equal protection of the law by "the 'Green Wall Gang' defendants." Doc. 1, pg. 14.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations and citations omitted). As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

13

As previously stated, plaintiff's claim of conspiracy by the "Green Wall Gang" is not cognizable as it fails to link factual allegations to an identifiable defendant.

In his statement of the claims, plaintiff alleges that Manuel, Cox, and Armstrong conspired to have plaintiff removed as a MAC, and advised the guards that he had been fired from being a MAC. Doc. 1, pg. 7. While this adequately alleges a meeting of the minds, plaintiff has no constitutional right to be a MAC. Thus, there is no actual deprivation of a constitutional right to form a cognizable conspiracy claim against Manuel, Cox, and Armstrong.

Plaintiff further alleges that "Defendants" intentionally conspired against him to cover-up the unreasonable use of force by Ervin, Jr. and McNeal, and the abuse of the disciplinary process by Braziel. Doc. 1, pg. 11. This conspiracy claim is also not cognizable as plaintiff's amorphous use of the term "Defendants," fails to show which defendants plaintiff is alleging conspired to cover-up the acts by Ervin, Jr., McNeal and Braziel.

### 6. *Unlisted Claims*

While plaintiff does not delineate causes of action for excessive force and body searches, he recites facts that implicitly allege as much.

#### a. *Excessive Force*

Plaintiff alleges that Ervin, Jr. told plaintiff to take his shorts off to enter the showers. Plaintiff refused, citing a memorandum from the Warden. When the posted memorandum was confirmed, Ervin, Jr. demanded, and plaintiff submitted to, a clothed body search. Ervin, Jr. next demanded an unclothed body search. When plaintiff refused the unclothed body search, and turned to be handcuffed, Ervin, Jr. "slammed" plaintiff against the "shower panel door." McNeal took control of plaintiff from Ervin, Jr. An alarm sounded. On the sounding of the alarm, McNeal told plaintiff to "get down." Plaintiff, who is "mobility impaired," responded that he was unable to do so while cuffed. McNeal "slammed" plaintiff to the ground. Plaintiff does not state what, if any injuries he sustained from this course of events. Doc. 1, pp. 7-8.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim

is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).

Plaintiff has stated a cognizable claim for cruel and unusual punishment against Ervin, Jr. for the malicious and sadistic use of force in slamming him against the shower panel door when plaintiff refused to voluntarily submit to an unclothed body search. However, McNeal forced plaintiff to the ground in response to an alarm sounding, which indicates that the force was

applied in a good-faith effort to maintain or restore discipline – not maliciously and sadistically to cause harm.  Thus, plaintiff has not stated a cognizable claim for cruel and unusual punishment against McNeal.

### b.     *Body Searches*

Plaintiff makes allegations regarding being searched by Ervin, Jr. and Braziel.

"A prison has a compelling and uncontroverted interest in preventing the introduction into or the transporting throughout the prison of contraband and in maintaining order in the institution. A prisoner has a very limited reasonable expectation of privacy in regard to a search of his person. There is no requirement that a search be supported by either probable cause or reasonable suspicion; instead the relevant inquiry is whether under all of the circumstances the search was reasonable. And the determination of reasonableness depends, as it does in any Fourth Amendment case, on the specific facts presented. In particular, a court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." People v. Collins 115 Cal.App.4th 137, 154-55 (2004) citing Bell v. Wolfish 441 U.S. 520, 559 (1979).

Plaintiff alleges that Ervin, Jr. told plaintiff to take his shorts off to enter the showers. Plaintiff refused citing a memorandum from the Warden.  When the posted memorandum was confirmed, Ervin, Jr. demanded, and plaintiff submitted, to a clothed body search.  Ervin, Jr. next demanded an unclothed body search.  When plaintiff refused the unclothed body search, and turned to be handcuffed, Ervin, Jr. "slammed" plaintiff against the shower panel door.  Doc. 1, pp. 7-8.  Plaintiff does not allege facts to imply that the clothed body search by Ervin, Jr. was overly intrusive, conducted in an unacceptable manner, or was conducted in an improper place. Lack of sufficient justification for conducting an otherwise proper search is insufficient to state a cognizable claim.  Further plaintiff's allegations do not imply that the demanded unclothed body search ever took place.  Thus, plaintiff has failed to state a cognizable claim against Ervin, Jr. for unreasonable search of his person.

Plaintiff alleges that, on April 23, 2005, Braziel errantly advised Hanaford that plaintiff had threatened him so as to keep plaintiff from attending religious services and to cause plaintiff

to be stripped naked, placed in an uncovered cage outside the office in the rain, and searched. Doc. 1, pg. 9. An unclothed search, in an uncovered cage outside in the rain based on false accusations is unreasonable. Plaintiff has thus stated a cognizable claim against Braziel.

### c.  *Supervisorial Liability*

Plaintiff alleges that Manuel authorized Haworth and Shambre to file false rule violation reports. Doc. 1, pp. 4-7.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff's allegations state a cognizable claim against Manuel for his authorization being the moving force behind Haworth and Shambre's filing of false rule violation reports.

### 7.  *State Law Claims*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is

discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because plaintiff may be able to state a claims for relief under section 1983, the Court reserves discretion to exercise supplemental jurisdiction over and to address plaintiff's state law claims after plaintiff files his amended complaint so as to allow plaintiff opportunity to state cognizable claims for relief under section 1983.

## II.  CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days. If plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of

morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the court in this order, or
    b. Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims identified by the court as viable/cognizable in this order; and
4. If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **April 10, 2008**              /s/ **Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE