JWB

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ruben Odell Boulware,<br><br>    Plaintiff,<br><br>vs.<br><br>Ervin, Jr., et al.,<br><br>    Defendants. | No. CV 1-05-1565-ROS<br><br>**ORDER** |

Plaintiff Ruben Odell Boulware, who is confined in the California Mens Colony East in San Luis Obispo, California, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. # 1).

United States Magistrate Judge Gary S. Austin issued an Order (Doc. # 20) finding that Plaintiff had stated both cognizable and uncognizable claims for relief and dismissed the Complaint with leave to amend to allow Plaintiff to amend his claims.[1]

Plaintiff filed a First Amended Complaint (Doc. # 21). This case was reassigned to the undersigned judge on November 25, 2008 (Doc. # 22). The Court dismiss Count One without prejudice and will order Defendants to answer Counts Two, Three, and Four of the First Amended Complaint.

---

[1] Plaintiff's original Complaint was missing one page, which also precipitated the Court's decision to dismiss with leave to amend to allow Plaintiff to provide a list of Defendants and the relief sought.

JDDL

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## II. First Amended Complaint

In his four-count First Amended Complaint, Plaintiff sues the following Defendants: (1) Ervin, Jr.; (2) Correctional Officer R. Braziel; (3) Correctional Sergeant Trujillo; (4) Correctional Officer Howell; (5) Correctional Lieutenant B. Jones; (6) Correctional Lieutenant S. S. Cox; (7) Correctional Captain T. Manuel; (8) Correctional Officer K. Haworth; (9) Correctional Officer S. Shambre; (10) Correctional Lieutenant Armstrong; (11) Correctional Sergeant W. Dutton; (12) Correctional Officer A. McNeal; and (13) Correctional Lieutenant R. Clayton (Doc. # 21 at 1). Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights and seeks declaratory, injunctive, and monetary relief.

### A. Background Facts

Plaintiff arrived at the Folsom State Prison (FSP) in January 2004. In September 2004, Plaintiff was elected to the Mens Advisory Counsel (MAC) and also served as the Building 3 spokesman. On September 5, 2004, Plaintiff filed a written grievance regarding the lack of outdoor exercise.

In January 2005, in connection with his MAC duties, Plaintiff was given access to other tiers of his building to converse with other inmates. Haworth stopped Plaintiff and asked him what he was doing out of his cell. Plaintiff informed Haworth that he was authorized to conduct MAC business by B. C. Adams. Plaintiff alleges that Haworth began making remarks about MAC functions, which was observed by another inmate and officer. On January 26, 2005, Plaintiff received a rule violation for allegedly disobeying a direct

order, which Plaintiff claims Haworth issued in retaliation because of his grievances about living conditions in building 3. Plaintiff was subsequently found guilty of a minor violation.

On January 27, 2005, Plaintiff filed a misconduct complaint against Haworth regarding the rule violation report. On January 30, 2005, Plaintiff wrote a letter to the Secretary of Adult and Youth Corrections, Director of Corrections and Rehabilitations, Inspector General, Warden of FSP, CDC Office of Internal Affairs, and Governor about a "code of silence" among staff and other conditions at FSP. The following day, Shambre submitted another rule violation report against Plaintiff for being out of bounds.

Manuel, Cox, and Armstrong then had Plaintiff suspended from acting as a MAC member by telling officers in building 3 that Plaintiff was no longer eligible to serve because of the pending rule violation reports. Plaintiff claims that Manuel told him that the real reason he was suspended from his MAC duties was because upper management was upset about the letter Plaintiff wrote to the Governor.

On February 8, 2005, Plaintiff wrote another letter to the Warden of FSP complaining about retaliation against himself and other MAC members. Also in February 2005, Plaintiff filed grievances about racial disparity in the hiring of African-American and Hispanic inmates within FSP and officers refusing to take inmate for showers.

On February 14, 2005, Plaintiff went for his shower when Ervin demanded that Plaintiff remove his shorts. Plaintiff advised Ervin that the Warden had authorized inmates to wear short with their shower shoes. Ervin became belligerent and demanded that Plaintiff show him the memo to this effect. Plaintiff and Ervin retrieved the memo; Ervin then demanded that Plaintiff submit to a clothed body search. Ervin then demanded that Plaintiff submit to an unclothed body search in the view of 40 inmates and female nurses and officers. Plaintiff declined to the unclothed searched and submitted himself to be handcuffed.

Plaintiff then asked Ervin if he was gay and Ervin responded by slamming Plaintiff against the shower panel door. Plaintiff alleges that his left shoulder and left thumb were bruised and sore. Plaintiff also claims that Manuel, Dutton, Ervin, and Cox attempted to

cover up the Ervin's use of excessive force by issuing a fabricated rule violation report and placing him in administrative segregation.

On February 13, 2005, Cox placed Plaintiff in administrative segregation for "behavior which could lead to violence." Plaintiff alleges that the real reason he was placed in administrative segregation was retaliation for Plaintiff's complaints about building #3.

On February 24, 2005, Plaintiff was suspended from MAC based on the fabricated rule violations, which Plaintiff alleges is an adverse action because of Plaintiff's grievances and complaints.

On April 23, 2005, Plaintiff alleges that Braziel refused to allow Plaintiff to attend religious services based on a false accusation that Plaintiff threatened him. Plaintiff was escorted to the watch office in the rain and was placed in a cage outside for two hours, was stripped naked, and was forced to stand on the wet cement to undergo a strip search. Plaintiff had no shelter from the rain and was not permitted to use the bathroom or drink water. Plaintiff was released back into the general population.

On April 24, 2005, Cox and Trujillo instructed Howell to prevent Plaintiff from attending religious services. Plaintiff filed a grievance complaining about denial of access to religious services and the strip search in the outdoor cage and was placed in administrative segregation.

### B. Counts for Relief

In Count One, Plaintiff alleges that Defendants Manuel, Dutton, Ervin, McNeal, and Cox violated Plaintiff's right to due process by issuing false rule violation reports that resulted in Plaintiff's placement in Administrative Segregation and a 30 day release credit loss.

In Count Two, Plaintiff contends that Defendants Haworth, Manuel, Shambre, Dutton, Clayton, Ervin, McNeal, Braziel, Trujillo, Howell, Jones, Cox, and Armstrong retaliated against Plaintiff by issuing false disciplinary reports, denying him access to religious services, and placing Plaintiff in administrative segregation, which resulted in Plaintiff's

1  placement in an outdoor cage during inclement weather and being strip searched in front of
2  other inmates.
3        In Count Three, Plaintiff alleges that on February 13, 2005, Ervin used excessive force
4  against Plaintiff by slamming him into a shower panel door, causing injury.
5        In Count Four,[2] Plaintiff claims that his Fourth Amendment rights were violated when
6  Braziel caused Plaintiff to be stripped naked, placed in an uncovered outdoor cage in the rain,
7  and searched.

**III.   Failure to State a Claim**

    **A.   Count One**

A civil rights claim brought pursuant to § 1983 that, if successful, would necessarily undermine the validity of a conviction may not be brought before the prisoner has obtained a "favorable termination" of the underlying conviction because a prisoner's sole federal remedy to challenge the validity of his confinement is a petition for a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Docken v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004) (disciplinary proceedings). That is, a civil rights claim under § 1983 does not accrue unless or until the prisoner has obtained a "favorable termination" of the underlying conviction, parole or disciplinary action. See Heck v. Humphrey, 512 U.S. 477, 489 (1994); Docken, 393 F.3d at 1031. Under the "favorable termination" rule:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction of sentence invalid, a "1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . .

Heck, 512 U.S. at 486-87. Without such a showing of a "favorable termination," a person's cause of action under § 1983 has not yet accrued. Id. at 489. The "favorable termination"

---

[2] Plaintiff has labeled this claim "Body Searches," which the Court construes as a separate claim for relief.

- 5 -

JDDL

rule has been extended to prisoner challenges to state disciplinary and parole procedures for damages where success thereon would "necessarily demonstrate the invalidity of confinement or its duration." Osborne v. District Attorney's Office for 3d Jud. Dist., 423 F.3d 1050, 1053 (9th Cir. 2005) (citing Wilkinson v. Dotson, 125 S.Ct. 1242 (2005)); see Edwards v. Balisok, 520 U.S. 641, 646 (1997) (calculation of good time credits); Butterfield v. Bail, 120 F.3d 1023 (9th Cir. 1997) (parole revocation proceedings). Thus, success on any claim for damages pursuant to 42 U.S.C. § 1983 that would necessarily imply the invalidity or duration of confinement does not accrue "and may not be brought" unless and until the underlying conviction, sentence or parole decision is reversed. Only then may a plaintiff properly seek damages pursuant to 42 U.S.C. § 1983.

Here, Plaintiff's claim that he was denied due process in connection with false disciplinary violation reports must be dismissed. Plaintiff has not alleged that those decisions have been reversed. Moreover, "[b]ecause an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of . . . physical confinement' and thus lies at the 'core of habeas corpus[.]'" Wilkinson, 544 U.S. at 79. Consequently, Count I will be dismissed.

### B. Denial of Religious Exercise

Although not specifically articulated, Plaintiff has presented facts that appear to allege a claim of denial of religious exercise. But Plaintiff has not stated a First Amendment or Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) claim because he has not alleged that being prevented from attending religious services twice constituted anything more than an inconvenience. Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (citing Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004). Therefore, any implicit RLUIPA or First Amendment claim is dismissed.

### IV. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated a claim in Counts Two, Three, and Four. The Court will require Defendants Haworth, Manuel, Shambre, Dutton, Clayton, Ervin, McNeal,

Braziel, Trujillo, Howell, Jones, Cox, and Armstrong to answer Count Two; Defendant Ervin to answer Count Three; and Defendant Braziel to answer Count Four.

## V. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5-133(d)(2). Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Count One and Plaintiff's implied claim of denial of religious exercise are **dismissed** without prejudice.

(2) Defendants Haworth, Manuel, Shambre, Dutton, Clayton, Ervin, McNeal, Braziel, Trujillo, Howell, Jones, Cox, and Armstrong must answer Count Two; Defendant Ervin must answer Count Three; and Defendant Braziel must answer Count Four.

(3) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. # 21), this Order, a Notice of Submission of Documents form, an instruction sheet, and copies of summons and USM-285 forms for Defendants Haworth, Manuel, Shambre, Dutton, Clayton, Ervin, McNeal, Braziel, Trujillo, Howell, Jones, Cox, and Armstrong.

(4)     Within **30 days** of the date of filing of this Order, Plaintiff must complete and return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit with the Notice of Submission of Documents: a copy of the First Amended Complaint for each Defendant, a copy of this Order for each Defendant, a completed summons for each Defendant, and a completed USM-285 for each Defendant.

(5)     Plaintiff must not attempt service on Defendants and must not request waiver of service.  Once the Clerk of Court has received the Notice of Submission of Documents and the required documents, the Court will direct the United States Marshal to seek waiver of service from each Defendant or serve each Defendant.

(6)     **If Plaintiff fails to return the Notice of Submission of Documents and the required documents within 30 days of the date of filing of this Order, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice.  See Fed. R. Civ. P. 41(b).**

DATED this 19th day of February, 2009.

Roslyn O. Silver
United States District Judge