1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Ruben Odell Boulware,                    )   No. CV-05-01565-ROS
                                             )
10              Plaintiff,                    )
                                             )   **ORDER**
11  vs.                                       )
                                             )
12                                            )
    D. Ervin, Jr., et al.,                    )
13                                            )
                Defendants.                   )
14                                            )
                                             )
15  ─────────────────────────────

16       For the reasons below, Defendants' Motion for Summary Judgment (Doc. 54) will be

17  granted, and Plaintiff's motions for default judgment (Docs. 45 and 49) will be denied.

18                              **BACKGROUND**

19       Plaintiff is a state prisoner at Folsom State Prison ("Folsom" or "FSP").  (Docs. 20

20  and 21).  Plaintiff brings this action against Folsom prison officers for retaliation, excessive

21  force and an illegal search.  The following facts are undisputed unless otherwise indicated.

22       Plaintiff was a member of the Mens Advisory Council ("MAC") at Folsom. (Doc. 60,

23  at Ex. 4).  On January 18, 2005, Plaintiff was temporarily suspended from the MAC for

24  disobeying a direct order, as reported in Log Number 305-01-035.  (Doc. 60, at Ex. 4).  On

25  February 24, 2005, Plaintiff was removed from the MAC.  (Doc. 60, at Ex. 4).

26       Plaintiff filed numerous inmate grievances at Folsom. (Docs. 54 and 60).  Those

27  grievances included, among others: Log #FSP-04-1376, filed September 5, 2004, challenging

28  the maximum number of inmates allowed in the yard and the use of "mini yards"; and, Log

1    #FSP-05-00417, filed on February 5, 2005, complaining about racial disparities and inmate

2    job assignments. (Docs. 54-2 and 60, at ¶¶ 1, 8).[1]

3    Plaintiff wrote letters on January 30 and February 8, 2005 to the Warden and other

4    state officials complaining of retaliation. (Id. at ¶ 7). Plaintiff contends his correspondence

5    and grievance activity were chilled when he was removed from the MAC. (Id. at ¶ 15).

6    Plaintiff, however, continued to file inmate grievances following each of his disciplinary

7    charges. (Id. at ¶ 17).

8    **RVR #305-01-035**

9    On January 18, 2005, Folsom had limited staff due to memorial services for a

10    correctional officer and was on a modified program permitting only limited inmate

11    movement . (Docs. 54-2 and 60, at ¶ 22).[2] Officer Haworth[3] was in the process of securing

12    the unit as Folsom employees returned to work from the memorial service. (Id. at ¶ 24).

13    Plaintiff asserts he was authorized to be out of his cell, and Defendants assert he was not

14    authorized to be out of his cell. (Id. at ¶ 24). Officer Haworth instructed Plaintiff to return

15    to his cell. (Id. at ¶ 26). Plaintiff was argumentative and continually talked over officer

16    Haworth and disregarded her authority as she attempted to order him back to his cell. (Id.

17    at ¶ 27). Plaintiff stated he was out of his cell because he was a MAC representative seeking

18    to talk to the sergeant about an issue regarding third watch failing to complete showers on

19

20    [1]  The institutional responses to these grievances were made by Correctional

21    Lieutenant Langford and Warden Knowles, and Correctional Counselor Heinz and Warden
Shepherd, respectively. (Id. at ¶¶ 3-4, 9-10). Langford, Knowles, Heinz and Shepherd are

22    not parties to this action. Plaintiff does not allege any Defendants were aware of these
grievances or appeals, and the Defendants deny being aware of these grievances and appeals.

23    (Id. at ¶¶ 5-6, 9-14).

24    [2]  Defendants assert Folsom was on lock down. (Id.).

25    [3]  The Court's docket shows Defendant "Haworth," as named in the Complaint and

26    First Amended Complaint, but certain briefing refers to this Defendant as "Hayworth." The
Court will use "Haworth" because it appears on the docket. There is no indication

27    "Haworth" and "Hayworth" are different people, but instead a typographical error by

28    Plaintiff or Defendants.

1    the previous night.  (Id. at ¶ 28).  However, Sergeant Olvera indicated Plaintiff did not talk

2    with him about MAC issues, and the activities log from the prior night showed the shower

3    program had been completed.  (Id. at ¶ 29).  Plaintiff violated Officer Haworth's direct order

4    to return to his cell.  (Id. at ¶ 34).  Acting as the hearing officer in RVR #305-01-035,

5    Lieutenant Clayton found the evidence supported the finding of Guilty of Disobeying a

6    Direct Order but chose to dismiss the charge and recorded the event.  (Id. at ¶ 40).  In so

7    doing, Lieutenant Clayton considered Plaintiff was told to lock up and did not comply but

8    also considered Plaintiff may have been attempting to conduct MAC business.

9    **AVR #305-02-003**

10   On January 31, 2005, Officer Shambre observed Plaintiff out of bounds - i.e. in an

11   area he was not permitted.  (Id. at ¶ 47).  Plaintiff contends he was permitted in this area

12   because he was conducting MAC business.  (Id.).  Plaintiff returned to his cell.  (Id. at ¶ 50).

13   Plaintiff refused to attend his administrative hearing and was found guilty of being out of

14   bounds in AVR #305-02-003.  (Id. at ¶¶ 44, 52-53).

15   **RVR #305-02-028**

16   On February 13, 2005, Officer Ervin instructed Plaintiff certain clothing worn by

17   Plaintiff was not allowed in the shower area.  (Id. at ¶ 66).  Defendants claim the policy

18   allows only one T-shirt, one pair of underwear, and one pair of shoes.  (Id. at 68).  Plaintiff

19   replied he was authorized to wear shorts.  (Id. at ¶¶ 67-68).  Officer Ervin instructed Plaintiff

20   to walk back to the first tier.  (Id. at ¶ 71).  Defendants assert Plaintiff made several

21   inflammatory remarks to Officer Ervin, which Plaintiff denies.  (Id. at ¶ 72).[4]

22   When they reached the first tier podium, Officer Ervin instructed Plaintiff to turn

23   around and face the wall for a clothed body search.  (Id. at ¶ 73).  The parties have different

24   versions of what happened next.  Plaintiff alleges the order for a clothed body search was

25   after Plaintiff gave Officer Ervin a memo stating Plaintiff could wear shorts.  (Id.)  As

26

27       [4]   Defendants assert Plaintiff made the following remarks to Officer Ervin: "You're
harassing me, you baby ass watcher.  You're just part of the Aryan Nation harassing black
28   people."  (Id. at ¶ 72).

Officer Ervin conducted the clothed body search,  Plaintiff asked Officer Ervin whether he was gay and if he felt "like a man." (Id. at ¶ 74).  Officer Ervin instructed Plaintiff to turn around and Sergeant Dutton ordered Plaintiff to submit to being handcuffed. (Id. at ¶P 75, 80-81).  As Plaintiff started to comply, officer Ervin placed his right hand on Plaintiff's right shoulder and "slammed" him against the shower panel door. (Id. at ¶¶ 80-83).  Plaintiff yelled "excessive force!" (Id. at ¶¶ 84-87).  Plaintiff concedes his injuries were no more serious than bruises and soreness to his left shoulder and left thumb.  (Doc. 21).

Defendants allege during the clothed body search Plaintiff told Officer Ervin, "You're a fag.  You like what you feel? You like that? You like touching black men?" (Doc. 54-2 and 60, at ¶ 74).   Plaintiff made obscene comments to Officer Ervin, pulled out his penis and disobeyed orders to turn around. (Id. at ¶¶ 75-79).  Officers handcuffed Plaintiff, who yelled, "Excessive Force! You guys see that? Write it down!" (Id. at ¶ 85, 87).  Officer McNeal escorted Plaintiff away. (Id. at ¶ 89).[5]

Officer Ervin issued RVR #305-02-028 to Plaintiff for behavior that could lead to violence. (Id. at ¶ 57).[6]  Officer Clayton found Plaintiff guilty of behavior that could lead to violence because he refused an officer's order, made inciteful statements, engaged in disruptive behavior and was confrontational with an officer. (Id. at ¶ 90). On February 13, 2005, Plaintiff was placed in administrative segregation by Lieutenant Cox for his inciteful behavior. (Id. at ¶ 91).  None of the Defendants were involved in the decision to place Plaintiff in segregation. (Id. at ¶ 97).

**RVR #105-04-120**

On April 23, 2005, Officer Braziel was monitoring inmates to the yard. (Id. at ¶ 102). When Plaintiff approached, the yard was capped, meaning the maximum number of inmates

---

[5]  Defendants deny the use of any force.  (Doc. 54-2 and 60, at ¶ 140).

[6]  Defendants assert Sergeant Dutton witnessed Plaintiff's behavior, and Plaintiff asserts Sergeant Dutton only saw a portion of the incident. (Id. at ¶ 58). Dutton submitted a supplemental report and was the reviewing supervisor. (Id. at ¶¶ 59-60).

that were allowed in the yard had been reached. (Id. at ¶¶ 103, 104).  Plaintiff wanted to attend a religious service but had a yard bag with him.  (Id. at ¶ 107).  Officer Braziel informed Plaintiff he would have to return his yard bag to his cell and could only bring his church items with him.  (Id. at ¶ 110).  A subsequent search of the yard bag found it contained legal work but did not contain anything for a religious ceremony.  (Id. at ¶¶ 112, 113).  Defendants assert Plaintiff yelled, "If you didn't have that gun coverage, you would be talking to me differently."  (Id. at ¶ 116).[7]  Plaintiff denies this.  (Id.).

Officer Braziel was the only staff present, and the area was filled with 20-25 inmates. (Id. at ¶¶ 119, 120).  Officer Braziel felt threatened due to Plaintiff's demeanor (Id. at ¶¶ 117, 118), but Plaintiff denies he threatened Officer Braziel.  (Id.).  Officer Braziel issued RVR #105-04-120 because: he perceived Plaintiff's statement as a direct threat; Plaintiff was aggressive and attempting to intimidate him; Plaintiff demonstrated blatant disregarded for his authority; Plaintiff was uncooperative; and Plaintiff was trying to manipulate the system to get into the yard at a time when he was not permitted on the yard.  (Id. at ¶ 121).

After the alleged threat to Officer Braziel on April 23, 2005, Plaintiff was searched and placed in restraints.  (Id. at ¶ 154).  Plaintiff was escorted to the Custody Complex by Sergeant Hannaford and Officer Holman, neither of whom are parties to this action.  (Id. at ¶¶ 155, 156).  Plaintiff alleges Sergeant Hannaford and Officer Holman placed Plaintiff in an "outdoor cage," forced him to strip down naked in the rain, and subjected him to a strip search. (Doc. 21).  Officer Braziel did not participate in this escort, and there is no evidence demonstrating Officer Braziel personally participated in placing Plaintiff in an outdoor cage on April 23, 2005.  (Doc. 54-2, at ¶¶ 157-160).

**April 24, 2005 Denial of Access to Religious Services**

The April 24, 2005 events were similar to the April 23, 2005 events.  Plaintiff sought to enter the yard with a yard bag, but the yard was capped.  Plaintiff attempted to attend a

---

[7]   *See also* (Id. at ¶ 125).

1   religious service but was told he could not take his yard bag.  Plaintiff was not permitted to

2   take a yard bag with non-religious content to a religious ceremony.  (Id. at ¶¶ 125-132).

3                    **April 27, 2005 Administrative Segregation**

4         On  April 27, 2005, Plaintiff was placed in administrative segregation by Lieutenant

5   Jones for threatening staff.  This was based on Plaintiff's conduct during his attempts to enter

6   the yard under the guise of going to a religious ceremony.  (Id. at ¶¶ 135-140).  Plaintiff

7   asserts he never threatened an officer.  (Id.).

8                    **Procedural Background**

9         Plaintiff's First Amended Complaint ("FAC") alleged four causes of action pursuant

10  to 42 U.S.C. § 1983.  (Doc. 21).  The Court dismissed Count One without prejudice.  (Doc.

11  23).  The remaining counts are: Count Two for retaliation against Defendants Armstrong,

12  Braziel, Clayton, Dutton, Ervin, Haworth, Howell, Manuel, McNeal and Shambre; Count

13  Three for excessive force against Defendant Ervin; and Count Four for an illegal "body

14  search" against Officer Braziel.  (Docs. 20 and 23).  On August 31, 2010, Defendants

15  Braziel, Clayton, Dutton, Ervin, Haworth, Howell, McNeal and Shambre moved for

16  summary judgment.  (Doc. 54).  On January 6, 2011, Defendant Armstrong joined in the

17  motion for summary judgment.  (Doc. 58).  On June 16, 2009, Defendant Manuel waived

18  service (Doc. 28), but has not otherwise appeared in the case.  On April 9, 2010, default was

19  entered against Manuel.  (Doc. 44).  Plaintiff's applications for default judgment against

20  Manuel are pending.  (Docs. 45 and 49).

21                              **ANALYSIS**

22  **I.    Summary Judgment Standard**

23         Summary judgment is appropriate where "there is no genuine issue as to any material

24  fact" and "the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  The

25  evidence of the non-moving party is to be believed, and all reasonable inferences drawn in

26  its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986).  "[A] party seeking

27  summary judgment always bears the initial responsibility of informing the district court of

28  the basis for its motion, and identifying those portions of the pleadings, depositions, answers

1   to interrogatories, and admissions on file, together with the affidavits, if any, which it

2   believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

3   *Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted).  However, if the non-moving

4   party bears the burden of proof at trial, the moving party's summary judgment motion need

5   only highlight the absence of evidence supporting the non-moving party's claims.  *See*

6   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at

7   323-25).  The burden then shifts to the non-moving party who must produce evidence

8   sustaining a genuine issue of disputed material fact.  *Id.*

9   **II.    Defendants Are Entitled to Summary Judgment**

10          **A.    Count Two - Retaliation**

11          In order to establish a retaliation claim under 42 U.S.C. § 1983, Plaintiff must show

12   he was retaliated against for exercising a constitutional right and the action was not related

13   to a legitimate penological purpose, such as institutional security.  *Barnett v. Centoni*, 31

14   F.3d 813, 815-16 (9th Cir. 1994); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

15   It is Plaintiff's burden to show there were no legitimate penological purposes motivating the

16   actions of which he complaints.  *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).  Courts

17   should avoid "excessive judicial involvement in day-to-day prison management" and "afford

18   appropriate deference and flexibility to prison officials in the evaluation of proffered

19   legitimate penological reasons for conduct alleged to be retaliatory."  *Pratt*, 65 F.3d at 807

20   (internal quotation omitted).

21          Preserving institutional order, discipline and security are legitimate penological goals.

22   *Barnett*, 31 F.3d at 816; *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  Requiring

23   respect for authority is also a legitimate correctional goal.  *Brodheim v. Cry*, 584 F.3d 1262,

24   1272 (9th Cir. 2009).  The safety and security of a penal institution requires inmates obey

25   rules and regulations and respect authority.  *Cutter v. Wilkenson*, 544 U.S. 709, 722-23

26   (2005); *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986).  It is undisputed that prison

27   security is a legitimate penological interest.  *Turner v. Safley*, 482 U.S. 78, 91 (1987).

28

1    Plaintiff alleges Defendants retaliated against him by filing false rules violations and

2    placing him in administrative segregation.  Plaintiff alleges the following acts constitute

3    retaliation: filing rules violation reports RVR #305-01-035, AVR #305-02-003, RVR #305-

4    02-028, and RVR #105-04-120; administrative segregation placements on February 13 and

5    April 27, 2005; and denial of access to religious services on April 24, 2005.  (Doc. 21).

6    However, these acts were in response to Plaintiff disobeying orders, disrespecting officer

7    authority, attempting to circumvent prison rules, inciteful behavior, and making

8    inflammatory remarks.  Plaintiff has not met his burden of showing the absence of any

9    legitimate penological goals.  *Pratt*, 65 F.3d at 806.  The undisputed facts establish

10   Defendants had a legitimate penological purpose for their rules violation reports.

11   In addition, Plaintiff must establish a specific link between the alleged retaliation and

12   the exercise of a constitutional right.  *Pratt*, 65 F.3d at 807.  Plaintiff has not drawn a causal

13   connection between any of his numerous grievances and any of his numerous rules

14   violations.

15   Further, Plaintiff must show his constitutional right was actually chilled by the alleged

16   retaliation.  *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).  Plaintiff asserts his

17   constitutional rights were chilled by his removal from MAC.  This decision, however, served

18   a legitimate penological purpose.  Further, there is nothing to indicate Plaintiff stopped filing

19   inmate grievances or writing letters to state officials after the alleged retaliatory action.

20   There Plaintiff's constitutional rights were not actually chilled.

21   Therefore, there is no genuine issue of material fact as to Count Two.

22   **B.    Defendant Manuel**

23   A court is "required to exercise 'sound judicial discretion' in deciding whether

24   [default] judgment should be entered [and] '[t]his element of discretion makes it clear that

25   the party making the request is not entitled to a default judgment as of right, even when

26   defendant is technically in default and that fact has been noted under Rule 55(a).'" 10

27   Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983) (citing cases).  "[I]n

28   determining whether [a party] is entitled to default judgment, the Court must still analyze the

merits of [the] claims and determine if it is entitled to judgment." *Allia v. Target Corp*., 2010 WL 1050043 *11 n. 15 (D. N.J. Mar. 17, 2010).   Defendant Manuel is only named in Count Two.  There are no facts to support liability under Count Two against any named Defendant. The alleged retaliatory action had a legitimate penological purpose, Plaintiff has not shown a specific link between the alleged retaliation and his constitutional rights, and Plaintiff has not demonstrated his constitutional rights were chilled.  As such, there is no issue of genuine fact as to Count Two against Manuel.  Plaintiff's motions for default judgment (Docs. 45 and 49) will be denied.

### C.    Count Three - Excessive Force

The Eighth Amendment prohibits cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Whitely v. Albers*, 475 U.S. 312, 319 (1986).   "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotations omitted).

"An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (internal quotations omitted). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.  The "extent of injury suffered by an inmate is one factor" in the excessive force inquiry because it may suggest whether the force used was thought to be necessary. *Id.* at 7   "The extent of injury may also provide some indication of the amount of force applied." *Wilkins*, 130 S.Ct. at 1178.[8]

Plaintiff alleges Officer Ervin used excessive force when Officer Ervin placed his right hand on Plaintiff's shoulder and "slammed" Plaintiff against a door in the course of

---

[8]   The absence of serious injury, however, does not end the inquiry. *Id.*

1    handcuffing him.  Plaintiff concedes his injuries were no more serious than bruises and

2    soreness to his left shoulder and left thumb.  Officer Ervin allegedly "slammed" Plaintiff into

3    the door after Plaintiff's refusal to obey a direct order regarding proper attire in the shower

4    area.  Plaintiff denies many of the allegations made by Plaintiff about obscene conduct and

5    statements, but admits he asked Officer Ervin if he was gay and if he felt like a man.  At a

6    minimum, Plaintiff disobeyed a direct order and challenged Officer Ervin's authority during

7    a disciplinary interaction, a clothed body search and handcuffing. Based on the allegations,

8    the undisputed facts, the context of the events and the injury, the force was minimal.  The use

9    of *de minimis* force against an inmate disobeying orders serves a penological purpose to

10   maintain order and security.  There is no genuine issue of material fact as to Count Three.

11           **D.    Count Four - Body Search**

12           Liability under Section 1983 requires a showing of personal participation by the

13   Defendant.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). In Count Four, Plaintiff

14   alleges he was subject to an illegal "body search" when he was placed in an "outdoor cage"

15   in the rain for two hours and subjected to a strip search.  However, Count Four is pending

16   only against Officer Braziel.  Officer Braziel's participation consists of filing a rules

17   violation report, RVR #105-04-120, after Plaintiff attempted to circumvent prison rules

18   regarding the maximum number of inmates allowed in the yard, taking yard bags to religious

19   ceremonies, making false statements to an officer and threatening an officer.  After these

20   events, Plaintiff was placed in restraints and escorted by Sergeant Hannaford and Officer

21   Holman to the Custody Complex, where he was allegedly placed in an outdoor cage and

22   subjected to a body search.  There is no evidence showing Officer Braziel personally

23   participated in the escort or the search, or ordered Plaintiff to be placed in an outdoor cage

24   on April 23, 2005 or searched.  Nor did Officer Braziel have such authority.  Officer Braziel

25   did not personally participate in the alleged violation.  There is no genuine issue of material

26   fact as to Count Four alleged against Officer Braziel.

27

28

1    **E.    Rule 56(d)**

2         In his Response to Defendants' Motion for Summary Judgment, Plaintiff states he

3    "has not been given a Court Order to begin Discovery and therfore [sic] Summary Judgment

4    is barred as a matter of law."  (Doc. 60, at 1).  "If a nonmovant shows by affidavit or

5    declaration that, for specified reasons, it cannot present facts essential to justify its

6    opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to

7    obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

8    order."  Fed. R. Civ. P. 56(d).[9]  This rule requires a court "continue a summary judgment

9    motion upon a good faith showing by affidavit that the continuance is needed to obtain facts

10   essential to preclude summary judgment."  *Cal Dep't of Toxic Substances Control v.*

11   *Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  A party seeking additional time to conduct

12   discovery must show "(1) that they have set forth in affidavit form the specific facts that they

13   hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-

14   after facts are 'essential' to resist the summary judgment motion."  *Id.*  Plaintiffs have failed

15   to make this showing.

16        Plaintiff has submitted a declaration with his Response, but it does not address the

17   need to conduct more discovery, let alone specific reasons required by Rule 56(d).  (Doc. 60,

18   at 87-91).  Plaintiff does not identify the specific facts he will seek, that those facts exist, and

19   that those facts are essential to resisting the summary judgment motion.  In his opposition to

20   Defendants' statement of facts in support of the Motion for Summary Judgment, Plaintiff

21   indicates more discovery is needed on two factual issues: (1) whether, as a result of limited

22   staff due to memorial services for a correctional officer on January 18, 2005, Folsom was on

23   lock down or only operating with limited inmate movement (Docs. 54-2 and 60 at ¶ 22); and

24   (2) whether the memo indicating acceptable attire in the shower facilities permits shorts (Id.

25   at ¶¶ 68 and 70).  The Court has adopted Plaintiff's version of these facts for purposes of

26

27        [9]   The 2010 Amendments to Rule 56 moved the provisions of subdivision (f) to
     subdivision (d).  Plaintiff's Response was filed after the December 1, 2010 rule change.
28   Plaintiff does not cite a specific rule.

1  summary judgment.  Therefore, Plaintiff would not be in any better position to defeat

2  summary judgment if permitted to take this discovery.

3      "Unless a different time is set by local rule or the court orders otherwise, a party may

4  file a motion for summary judgment at any time until 30 days after the close of all

5  discovery."  Fed. R. Civ. P. 56(b).  Defendants' Motion for Summary Judgment will be

6  granted.

7      Accordingly,

8      **IT IS ORDERED** Defendants' Motion for Summary Judgment (**Doc. 54**) is

9  **GRANTED**.

10     **IT IS FURTHER ORDERED** the Entry of Default against Defendant Armstrong

11  (**Doc. 51**) is **VACATED**.

12     **IT IS FURTHER ORDERED** Plaintiff's motions for default judgment (**Docs. 45**

13  **and 49**) are **DENIED**.

14     **IT IS FURTHER ORDERED** the **Clerk of the Court** shall enter **judgment** in favor

15  of Defendants Armstrong, Braziel, Clayton, Dutton, Ervin, Haworth, Howell, Jones, Manuel,

16  McNeal, and Shambre.  The Clerk shall terminate this case.

17     DATED this 29th day of March, 2011.

18

19

20

21  _____

       Roslyn O. Silver

       Chief United States District Judge

22

23

24

25

26

27

28